J-S38025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL L. LEON | : | |
| | : | |
| Appellant | : | No. 1621 EDA 2018 |

Appeal from the Judgment of Sentence February 26, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002882-2017

BEFORE: OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 09, 2019**

Appellant, Angel L. Leon, appeals from the Judgment of Sentence entered in the Montgomery County Court of Common Pleas on February 26, 2018, following his negotiated guilty plea to one count of Drug Delivery Resulting in Death, and two counts of Possession with Intent to Deliver ("PWID").[1] After careful review, we affirm.

The facts and procedural history, as gleaned from the record, including the trial court's November 7, 2018 Opinion, are as follows. On February 23, 2017, Roger Korfmann died from a heroin overdose. The initial investigation into Mr. Korfmann's death showed that he and Appellant had exchanged text messages that were drug related. On April 14, 2017, Upper Merion Township police and Montgomery County detectives executed a search warrant on

_____

[1] 18 Pa.C.S. § 2506(a) and 25 P.S. § 780-113(a)(30), respectively.

_____

* Retired Senior Judge assigned to the Superior Court.

Appellant's home, resulting in the recovery of drugs and a firearm. Police arrested Appellant that same day and the Commonwealth charged him with the above crimes, as well as numerous other offenses including Recklessly Endangering Another Person and Unlawful Possession of a Firearm.

On January 30, 2018, Appellant filed a Motion to Suppress Statements, Physical Evidence, and Cell Service Information Data.[2] The Commonwealth filed a Response to Appellant's Motion to Suppress on February 5, 2018. The court scheduled a hearing on the Motion and other pretrial matters for February 26, 2018.

On Friday February 21, 2018, prior to the hearing and before the court had ruled on Appellant's Motion to Suppress, the Commonwealth discovered that the authorizing magistrate judge had neglected to sign one of the two signature lines on the face of the search warrant, thus rendering the warrant defective.[3]

In light of this discovery, the Commonwealth extended a plea offer to Appellant of 8 to 16 years' incarceration, followed by 4 years of probation. The Commonwealth explained to Appellant that, even though under Pennsylvania

---

[2] The trial court docket reflects that, on July 26, 2017, Appellant's prior counsel had previously filed a Motion to Suppress Statement and a Motion to Suppress the Search of [Appellant's] Residence and Search of [Appellant's] Cell Phone. It does not appear that the trial court disposed of these Motions.

[3] Pursuant to Pennsylvania law, this defect rendered all of the evidence obtained during the search of Appellant's home inadmissible.

law its search warrant was fatally flawed, the federal government recognizes a "good faith exception" to the warrant requirement that would render it valid in a federal prosecution.[4] The prosecutor further explained that the U.S. Attorney's Office for the Eastern District of Pennsylvania was interested in bringing federal charges against Appellant for offenses related to the drugs and firearm recovered from his home which, because of Appellant's prior criminal record, would expose Appellant to a 20- to 40-year mandatory minimum sentence of incarceration if he were convicted in federal court.[5] The Commonwealth and the U.S. Attorney advised Appellant that he had until Monday February 26, 2018, to accept the plea deal.

On February 26, 2018, the parties appeared for the previously-scheduled suppression hearing. Counsel explained to the court the status of the case and that Appellant was still considering the Commonwealth's plea offer. The court delayed commencement of the hearing so that Appellant could confer with his attorney and his family about the plea offer. In addition, the U.S. Attorney's Office provided Appellant with a letter explaining its intentions.

---

[4] The magistrate judge who approved the instant warrant was willing to testify that the omission of his signature was inadvertent, and he did, in fact, find probable cause to issue the warrant.

[5] In particular, the U.S. Attorney indicated that the federal government intended to indict Appellant for PWID, Possession of a Firearm in Furtherance of Drug Trafficking, and Felon in Possession. *See* 21 U.S.C. § 841(a), and 18 U.S.C. §§ 924(c); 922(g); and 922(e), respectively.

After the delay, Appellant informed the court that he would accept the Commonwealth's offer, following which Appellant's counsel and the court conducted a lengthy and thorough guilty plea colloquy. *See* N.T., 2/26/18, at 7-22. The court immediately sentenced Appellant to the negotiated term of 8 to 16 years' incarceration followed by 4 years of probation.

On March 2, 2018, Appellant wrote a letter to the trial court seeking to withdraw his guilty plea. The envelope in which Appellant mailed the letter bore a postmark dated March 5, 2018. The Montgomery County Court of Common Pleas docketed the letter on March 9, 2016, and forwarded a copy of it to Appellant's counsel pursuant to Pa.R.Crim.P. 576(A)(4).

On March 16, 2018, Appellant's counsel filed a Petition requesting leave to file a Motion to Withdraw Guilty Plea *Nunc Pro Tunc*. On March 26, 2018, the trial court expressly granted Appellant leave to file a Motion to Withdraw Guilty Plea *nunc pro tunc*. The Commonwealth filed a Response to Appellant's Motion on April 25, 2018. On May 11, 2018, the trial court held a hearing on the Motion to Withdraw Guilty Plea, and denied the Motion that same day.

This timely appeal followed.[6] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

---

[6] Appellant's request to file a Motion to Withdraw his guilty plea, and the trial court's express grant to Appellant of permission to file the Motion within 30 days of his Judgment of Sentence, tolled the deadline for Appellant to file a timely Notice of Appeal. *See Commonwealth v. Capaldi*, 112 A.3d 1242, 1244 (Pa. Super. 2015) (explaining that a post-sentence motion *nunc pro tunc* will toll the appeal period if the defendant both requests that the court

Appellant raises the following issue on appeal:

> [] Did the trial court err in denying [Appellant's] [M]otion to [W]ithdraw his guilty plea after prosecution informed him for the first time mere days before his pre-trial hearing that he would face federal charges if he did not accept the time-limited plea offer?

Appellant's Brief at vi.

Appellant claims that the trial court erred in denying his Motion to Withdraw Guilty Plea because the Commonwealth deprived him of a "reasonable timeframe to process" its plea offer. *Id.* at 10. Appellant avers that his plea was not knowing, intelligent, and voluntary in light of the "high-stakes" nature of the decision to enter a plea, and the Commonwealth's "inflexible deadline[.]" *Id.* at 10-11. He insists that it was unreasonable for the Commonwealth to "attach an inflexible, short deadline to the plea offer" where the basis for that offer—the Commonwealth's fatally defective search warrant—introduced "both a new ground for defense and potential federal charges[.]" *Id.* at 12. Appellant also impugns the Commonwealth's eleventh-hour cooperation with the federal government, and characterizes the U.S. Attorney's "newfound interest" in prosecuting him as "operating effectively as a threat to coerce him into accepting the Commonwealth's [plea] offer." *Id.* at 12-13. He concludes, therefore, that the "unique circumstances of the [Commonwealth's] pressurized offer in light of the liberty interests at stake created an unjust atmosphere of duress." *Id.* at 13.

---

consider his motion *nunc pro tunc*, and the court expressly permits the filing of a post-sentence motion *nunc pro tunc*, within 30 days of his judgment of sentence).

- 5 -

We review an order denying a post-sentence motion to withdraw a guilty plea for an abuse of discretion. **Commonwealth v. Gordy**, 73 A.3d 620, 624 (Pa. Super. 2013). We will not disturb the trial court's decision absent an abuse of that discretion. **Id.**

Following the imposition of a sentence, a defendant can withdraw his guilty plea only where it is "necessary to correct a manifest injustice." **Commonwealth v. Kpou**, 153 A.3d 1020, 1023 (Pa. Super. 2016) (citation omitted). A "manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." **Id.** (citation omitted).

Pa.R.Crim.P. 590 requires that the court take pleas in open court and conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. **Commonwealth v. Hodges**, 789 A.2d 764, 765 (Pa. Super. 2002) (citing Pa.R.Crim.P. 590). Under Rule 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. **Commonwealth v. Watson**, 835 A.2d 786, 796-97 (Pa. Super. 2003). This Court evaluates the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. **Commonwealth v. Muhammad**, 794 A.2d 378, 383-84 (Pa. Super. 2002).

Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa. Super. 2003).

The Honorable Gail A. Weilheimer, who presided over all stages of Appellant's case, has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. ***See*** PCRA Court Opinion, 9/7/18, at 5-14 (considering the totality of the circumstances surrounding the entry of Appellant's plea and concluding that the "record reflects Appellant's understanding of the guilty plea that he voluntarily chose to enter, as he was given an extensive qualifying examination during which [the trial court] and counsel for both parties clearly explained the issues with regard to the charges and sentencing"). Our review of the record, including the Notes of Testimony from Appellant's guilty plea colloquy, supports the trial court's conclusion. We, thus, conclude that the trial court did not abuse its discretion in denying Appellant's Motion to Withdraw his guilty plea, and we affirm on the basis of the trial court's Opinion.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/19

OPINION

CLERK OF COURTS

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION** COUNTY
PENNA.

COMMONWEALTH OF PENNSYLVANIA     2018 NOV -7 PM 2: 55    Common Pleas Court No.:
                                                  CP-46-CR-0002882-2017

      v.

                                                     Superior Court No.:

ANGEL LEON                                                  1621 EDA 2018

---

## OPINION

WEILHEIMER, J.                                                    November 7, 2018

Defendant/Petitioner, Angel Luis Leon ("Appellant"), instantly appeals to the Superior Court of

Pennsylvania ("Superior Court") from his February 26, 2018, Judgment of Sentence entered by this Court

of Common Pleas of Montgomery County's ("trial court"). Based upon the following, the Judgment of

Sentence should be affirmed.

### FACTUAL & PROCEDURAL HISTORY

On April 14, 2017, Appellant was charged with drug delivery resulting in death, possession with

the intent to deliver a controlled substance, person not to possess a firearm, and other charges[1] related to

the overdose death of Roger Korfmann and the subsequent search of Appellant's residence. (Criminal

Complaint, 4/14/17.)

The hotel staff at the Hyatt House Hotel in Upper Merion Township, Pennsylvania discovered Mr.

Korfmann dead in his room on Thursday, February 23, 2017. (*See* Affidavit of Probable Cause, 4/14/17.)

Police recovered substantial evidence of heroin use including seventeen (17) wax paper bags of heroin.

(*Id.*) The police also found multiple empty blue wax paper bags, syringes, and Mr. Korfmann's cellular

phone. (*Id.*)

The initial investigations into the death showed that text communications extracted from the

victim's phone established the victim communicated with a cellular phone belonging to Appellant. (*Id.*)

---

[1] The Bill of Information alleges fifteen (15) separate charges. (*See* Bill of Information, 6/29/17.)

The detectives analyzed the call records and concluded that the exchanges between the victim and Appellant were drug related. (*Id.*)

On April 14, 2017, the Upper Merion Township Police and Montgomery County Detectives executed a search warrant on the home of Appellant. (*Id.*) The search resulted in the recovery of drugs and a firearm. (*Id.*) Appellant was arrested following the search and transported to Montgomery County for questioning regarding the death of Mr. Korfmann and the items found in his home. (*Id.*)

On Friday, February 23, 2018, the Commonwealth met with defense counsel and conveyed an offer in this case. (*See* Comm'w. Response, 4/26/17.) Two days prior, on February 21, 2018, the Commonwealth discovered that the search warrant for Appellant's residence contained a fatal flaw in Pennsylvania as it was not signed by the magistrate on one of the two signature lines on the face sheet. (*Id.*) It was an inadvertent omission by the signing judge, and the signing judge was willing to testify that he did in fact find probable cause but mistakenly omitted the signature. (*Id.*) Both the Commonwealth and defense counsel timely filed pretrial motions and responses, and the trial court scheduled a hearing on the motions for February 26, 2019 at 9:00 am. (*See* Order, 12/11/17.)

The Commonwealth informed the defense of the error on the face sheet and explained that the U.S. Attorney's Office for the Eastern District of Pennsylvania (USAO EDPA) was interested in bringing charges against Appellant for the drugs and the firearm recovered from his home, which would have exposed Appellant to twenty (20) to forty (40) year mandatory minimum should he be convicted. (Comm'w. Response, 4/26/17.) The federal government recognizes a good faith exception to the warrant requirement such that the warrant would not be fatally flawed in a federal prosecution.[2] In summary, the Commonwealth would still pursue the drug delivery death and the drug deliveries that occurred in Montgomery County and the federal government would pursue charges connected with the drugs and gun found in Appellant's home. The Commonwealth further explained that the USAO EDPA agreed they

---

[2] *See US v. Leon*, 468 US 897 (1984) holding that the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate.

2

would not pursue any federal charges if Appellant accepted the Commonwealth's offer of eight (8) to sixteen (16) years plus the four (4) year probation by February 26, 2018. (*Id.*; *see also* N.T. – Guilty Plea at 3:10-4:14.)

On Monday, February 26, 2018, the Commonwealth, defense counsel, and Appellant appeared in court for the previously scheduled pretrial motion hearing. (N.T. – Guilty Plea at 3:6-19.) Both counsel met with the trial court to explain the status of the case and explain Appellant was still considering the Commonwealth's offer that was extended to him on Friday. (*Id.* at 3:10-4:14, 2/26/18). Defense counsel continued discussions with Appellant.

While contemplating the plea, Appellant was aware that under state law, the omission of the judge's signature from the search warrant was a fatal defect, and as such, none of the evidence would be admissible in a Pennsylvania court. (*Id.* at 9-11.) Appellant was also cognizant that while the Commonwealth decided not to pursue the charges related to the search, the federal government, under the good faith exception, was not precluded from indicting on those offenses. (*Id.*)

The trial court provided Appellant with substantial accommodations including, exclusive access to the entire courtroom with his family and his attorney and the courtroom telephone to make any calls regarding the plea that his wished. (*Id.* at 4:1-14.) Furthermore, the letter from the U.S. Attorney's Office was provided to Appellant so that he could make an intelligent decision in determining whether or not to accept the plea. (D-1.)

At approximately 11:15 am, Appellant informed the trial court that he wished to accept the Commonwealth's offer. (*Id.*) Appellant plead guilty to Count 1, drug delivery resulting in death, a felony in the first degree. Additionally, he pled guilty to Count 3 and Count 4, possession with intent to deliver, an ungraded felony. As a result of this negotiated plea, the federal government agreed not to prosecute Appellant and the Commonwealth withdrew the remaining counts, Count 2 and Counts 4 through 15. (*See* N.T. – Guilty Plea.)

3

Ultimately, Appellant was sentenced for a term of a minimum period of eight (8) years and a maximum period of sixteen (16) years, plus a four (4) year consecutive probation. (*Id.* at 22:4-8.) Appellant completed a written and an extensive oral colloquy in which he clearly acknowledged that he was knowingly, voluntarily, and intelligently entering into a guilty plea. (D-2, Colloquy, 2/26/18.)

Appellant, through a *pro se* letter to the trial court, asked permission to withdraw his guilty plea on March 2, 2018[3]. (*See Pro Se* Correspondence, 3/9/18.) Defense counsel then filed a *Nunc Pro Tunc* Motion to Withdraw Guilty Plea on March 16, 2018. (*See* Motion to Withdraw Guilty Plea, 3/16/18.) After a hearing, the trial court denied Appellant's Motion on May 11, 2018. (*See* Order, 5/11/18; N.T.–Hearing, 5/11/18.)

On May 25, 2018, Appellant filed his Notice of Appeal from his February 26, 2018, Judgment of Sentence entered by the trial court. (*See* "Notice of Appeal", 1/18/18.) On September 28, 2018, the trial court directed Appellant to file a Concise Statement of Matters Complained of on Appeal ("Concise Statement") pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.), § 1925(b). (*See* Order, 9/28/18.) Appellant filed his Concise Statement on October 19, 2018, raising the following issue:

> 1. APPELLANT'S PLEA WAS NOT GIVEN "KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY." SEE GENERALLY, COMMONWEALTH V. HODGES, 789 A.2D 764 (PA.SUPER.CT.2002). THE TRIAL JUDGE PROVIDED OPPORTUNITIES FOR APPELLANT TO CONSULT WITH HIS ATTORNEY BEFORE ACCEPTING THE PLEA AND THE COURT CONDUCTED ORAL AND WRITTEN COLLOQUIES. NONETHELESS, AS DESCRIBED IN APPELLANT'S *NUNC PRO TUNC MOTION* TO WITHDRAW GUILTY PLEA, THE UNIQUE CIRCUMSTANCES OF THE PROSECUTOR'S PRESSURIZED OFFER IN LIGHT OF THE LIBERTY INTERESTS AT STAKE CREATED AN UNJUST ATMOSPHERE OF DURESS.

(*See* Appellant's "Concise Statement", 10/19/18.)

*The rest of this page was intentionally left blank.*

---

[3] Appellant's letter was dated March 2, 2018 and received by the trial court on March 9, 2018.

4

## I.   STANDARD OF REVIEW

"In order to sustain the entry of a guilty plea a reviewing court must be satisfied that facts acknowledged by defendant constitute a prohibited offense, and that defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea." *Comm. v. Clinger*, 833 A.2d 792, 795 (quotation and citation omitted). "[O]nce the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. *Comm. v. Willis*, 68 A.3d 997, 1002 (Pa.Super.2013) (quotation and citation omitted). The instant record reflects Appellant's understanding of the guilty plea that he voluntarily chose to enter, as he was given an extensive qualifying examination during which this Court and counsel for both parties clearly explained the issues with regard to his charges and sentencing. (*See generally* N.T. – Guilty Plea.) Wherefore, based on the foregoing and the following discussion, the entry of the guilty plea and subsequent sentencing by this Court should be affirmed.

## II.   THE INSTANT RECORD REFLECTS APPELLANT'S KNOWING, VOLUNTARY, AND INTELLIGENT ACCEPTANCE OF THE GUILTY PLEA AND HIS FULL UNDERSTANDING OF THE TERMS AND CONSEQUENCES OF THE SAME.

Pleas and plea agreements are governed by Pennsylvania Rule of Criminal Procedure 590, which provides, "[p]leas shall be taken in open court," and "[t]he judge may refuse to accept a plea of guilty [...] and shall not accept it unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered." **Pa. R. Crim. P. 590(A)(1), (3)**. Rule 590 requires a separate inquiry of the defendant on the record by both counsel and the court to determine voluntariness. *Id.* **(B)**. The Pennsylvania Supreme Court established the following analysis for determining whether a court should accept a plea as valid:

> The constitutional requirement for a valid guilty plea is that the record of the guilty plea hearing contain an affirmative showing that the defendant understands what the plea connotes and . . . its consequences. In particular cases, this understanding has been held to include: (1) an understanding what specific acts the defendant is admitting and whether they make out the crime charged; (2) an understanding of the rights given up by choosing

5

not to put the state to its proof; and (3) an understanding of the nature and extent of punishment which may be imposed for the crime which the defendant admits committing.

*Comm. v. Rodgers*, 350 A.2d 815, 817 (Pa. 1976) (quotation marks omitted). Furthermore, "[t]he mere fact that a defendant is under pressure at the time he entered a guilty plea will not invalidate the plea, absent proof that he was incompetent at the time the plea was entered." *Comm. v. Myers*, 642 A.2d 1103, 1107 (Pa.Super.1994) (citing *Comm. v. Egan*, 469 A.2d 186, 189 (Pa.Super.1983) (en banc)).

The reviewing court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. *Comm. v. Muhammad*, 794 A.2d 378 (Pa.Super.2002). Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. *Comm. v. Kpou*, 153 A.3d 1020, 1023–24 (Pa. Super. Ct. 2016)(internal citations omitted).

First, Appellant completed an oral colloquy, under oath, on the record and he completed a written colloquy with his attorney. (N.T. – Guilty Plea; D-2.) Appellant agreed on the record that his guilty plea he negotiated with the Commonwealth was voluntary, knowing, and intelligent. The actual transcript reads as follows:

BY MS. ALLMAN:

Q       Okay. Because you're entering a guilty plea, assuming the judge accepts the plea and the agreed-upon sentence, your appeal would be limited to four particular grounds. The first would be that your plea was not voluntary, knowing, or intelligent. Do you understand that?

A       Yes.

Q       And what we're going through right now, both this form as well as the questions that we're answering, those help a Court to know that this was a knowing and understanding plea; do you understand that?

A       Yes.

(N.T. – Guilty Plea 16:17-17:4.) Furthermore, Appellant understood what his negotiated plea connoted and the consequences, as outlined by the Pennsylvania Supreme Court in *Rodgers supra.*

6

The record established that the Appellant had an understanding of what specific acts he is admitting and whether they make out the crime charged, an understanding of the rights given up by choosing not to put the state to its proof and that he had an understanding of the nature and extent of punishment which may be imposed for the crime which the he admits committing. This Court has gone through the *Rodgers* analysis in the instant Opinion as follows:

### (1) Specific acts the defendant is admitting

Appellant had a full understanding of the acts for which he was admitting guilt upon entering the plea agreement with the Commonwealth, which was also established on the record as follows:

BY MS. LUPINACCI:

Q Mr. Leon, with regards to the state charges that you're pleading guilty to today, the first one is Count 1, drug delivery resulting in death. And that is for the overdose death where you had delivered controlled substances to the victim in this case, Roger Korfmann, in February, 2017, at the Hyatt Hotel in Upper Merion Township, Montgomery County. Do you understand that those are the facts with regards to that count that you're pleading guilty to?

A Yes.

Q With regards to Count 3 and Count 4, they are for two deliveries to Roger Korfmann, the first one that took place on February 21, 2017. And he traveled to Philadelphia, to your residence, and you had sold him controlled substances on that date. And, with regards to Count 4, possession with intent to deliver, that count is for February 22nd to the 23rd, 2017, when you traveled into Montgomery County and had delivered controlled substances to Roger Korfmann. Do you understand, for those two counts, they are the facts to which you are pleading to?

A Yes.

(N.T. – Guilty Plea 19:7-20:4.) This portion of the record clearly indicated to Appellant the facts that made the basis of the drug delivery resulting in death and possession with intent to deliver charges for which he pled guilty. (*Id.*)

*The rest of this page was intentionally left blank.*

7

## (2) Understanding the rights given up

It is also required under the law that a full understanding includes the rights a defendant is giving up when entering a voluntary, intelligent, and knowing plea. Appellant was informed very specifically on the record of the rights he would give up by choosing to go forward with a guilty plea as follows:

BY MS. ALLMAN:

Q       And now, Mr. Leon, despite that letter and the clear intentions of the federal government, you do still understand that you and I could have gone to a jury trial in the charges that would have remained in Montgomery County, which would have been the charges connected to the death of Mr. Korfmann?

A       Yes.

Q       And we would have picked that jury today together. And we talked about what that would look like; correct?

A       Yes.

Q       And our ability to strike jurors who could not be fair as a matter of law, but also to strike jurors because you and I had a particular issue with them?

A       Yes.

Q       Okay. We also talked about the fact that the Commonwealth would have had to prove every element of the crime charged against you had we proceeded to trial?

A       Yes.

Q       And that you would have been presumed innocent until the Commonwealth did meet that burden; correct?

A       Yes.

Q       And you also understand that you would not have had to testify at that trial?

A       Yes.

Q       And, by entering this guilty plea, you're aware that you're giving up all of those rights?

A       Yes.

Q       And that you are making an admission to guilt?

A       Yes.

8

[...]

Q      Okay. You also understand that by entering a guilty plea, not only do you give up a lot of the rights to have a jury and to have a jury decide your guilt, but you're also giving up a lot of your appellate rights? Do you understand that?

A      Yes.

(N.T. – Guilty Plea 13:10-14:15, 15:12-17; *see also* D-1.)   This portion of the record shows the defense attorney outlined Appellant's rights to a jury trial and the burden the Commonwealth held to prove him guilty for which he was waiving upon entry of the guilty plea. (*Id.*)

### *(3)    Understanding nature and extent of punishment*

In order for there to be a full understanding and a valid plea, the defendant must be informed of the nature and extent of punishment, which he was made abreast of on the record as follows:

BY MS. LUPINACCI:

Q      Okay. You also understand that at Count 1, which is charged as a drug delivery resulting in death, even though it is graded as a first-degree felony, it is punishable by a maximum sentence of 20 to 40 years' incarceration?

A      Correct. Yes.

Q      And, also, you understand that at Counts 3 and 4, which are charged as possession with intent to deliver, that because of prior criminal history, you could have looked at a potential sentence of 15 to 30 years on each of those counts?

A      Yes.

[...]

Q      Based upon all of that, you also understand that the Commonwealth extended an offer in Montgomery County to accept a guilty plea for the terms that you've heard; correct?

A      Yes.

Q      And those terms are 8 to 16 years, followed by a consecutive 4-year period of probation?

A      Yes.

9

(N.T. – Guilty Plea 14:21-15-8, 11:16-23.) This portion of the record explains the potential range of sentence prior to Appellant entering the plea, thus making his subsequent entry of the negotiated plea, a knowing, voluntary, and intelligent plea.

Furthermore, Appellant was not under the kind of pressure that would invalidate his guilty plea. Of course, any defendant is going to feel some pressure when deciding whether to risk going to trial or to accept a plea agreement where the outcome and possible consequences are certain. Specifically, Appellant argues that his plea was not knowing, intelligent, or voluntary because of the deadline on the plea provided by the Commonwealth and the possibility of federal charges. (Motion to Withdraw at 7.) This particular issue, however, was covered in prodigious detail during the oral plea colloquy. Appellant had sufficient time to make this decision and discuss anything with defense counsel before entering into a guilty plea. Such was established on the record at the February 26, 2018 hearing as follows:

BY THE COURT:

> Based on the changing dynamic, the offer that was made, and the interest of the U.S. Attorney's Office in having an answer today of whether or not this case was going to be resolved or going to be prosecuted federally, I did have Mr. Leon brought into the courtroom, gave him the opportunity -- for the past two hours -- to meet with his attorney exclusively in the courtroom, with family members present, as well as give counsel the opportunity to have Mr. Leon call any family members that he wished to while contemplating this decision.
>
> [...]
>
> You have had, in addition to conversations with Ms. Allman ongoing throughout this case, the opportunity to speak with her both last Friday and for a few hours this morning. If while she's asking you questions at any point you need to speak with her privately, that is fine. Just let us know and I will give you the opportunity to speak with her privately as she's asking you these questions.
>
> [...]

BY MS. ALLMAN

> Q.    Okay. Sir, do you understand what you're charged with in this case, that the Commonwealth had charged you with a drug delivery resulting in death? Do you understand that?
>
> A:    Yes.

10

Q: They'd also charged you with a number of other charges that involved drug deliveries, but also incidents within your home in Philadelphia; do you understand that?

A: Yes.

Q: And you and I have talked about the reason why Montgomery County was initially able to prosecute even those incidents that occurred in Philadelphia, because of the way the jurisdiction works and also because Philadelphia agreed to let Montgomery County prosecute?

A: Yes.

Q: You also understand that we had filed motions challenging some of the evidence that the Commonwealth had obtained in this case; correct?

A: Yes.

Q: And you and I had an opportunity on Friday to discuss the fact that, under Pennsylvania law, there is a fatal defect with the search warrant that was served upon your home?

A: Yes.

Q: And you understand that, because of that fatal defect -- namely a signature line was not signed by a magistrate –

A: Yes.

Q: -- that the search of your home, none of that evidence would have been admissible in Montgomery County or in any court in Pennsylvania?

A: Yes.

Q: However, we also discussed the bad news, which was that that exception in Pennsylvania law does not apply in federal law. And we discussed that matter; correct?

A: Yes.

Q: Namely, that that absent or missing signature would not stop the warrant from being valid under a federal standard.

A: Right. Yes.

Q: Thank you. We also discussed that the federal government had indicated an interest in pursuing several criminal charges against

11

you in connection with the drugs and gun found in your home in Philadelphia; and, specifically, they were looking at charging you under the United States Code, Title 18, Section 922 and 924. We talked about those; correct?

A:     Yes.

Q:     And then, additionally, under Title 21 of the United States Code, Section 841.

A:     Yes.

Q:     And we talked about because of your prior record and because the federal government has very different sentencing standards, that they would be seeking a mandatory minimum sentence of at least 20 years of incarceration?

A:     Yes.

Q:     And we also talked about the fact that that's just the bottom number and that the sentence federally could have been substantially higher, and there was no way for me to tell you what that sentence would be in any sort of definite fashion, other than at least 20 years if convicted?

A:     Yes.

[...]

Q      ...By making your admission today, are you admitting that you are, in fact, guilty of a drug delivery resulting in death and two counts of possession with intent to deliver?

A      Yes.

Q      Okay. Besides the issues that we've already discussed with regard to the federal government, has anyone forced or threatened you to enter this plea?

A      No.

Q      And is this of your own free will?

A      Yes.

Q      Have you and I had an opportunity to talk about this matter -- not just on Friday, but on other occasions?

A      Yes.

12

Q       And are you satisfied with the time that I've spent with you discussing this matter?

A       Yes.

Q       And are you satisfied with my representation of you?

A       Yes.

(N.T. – Guilty Plea 4:4-14,7:9-16, 8:22-11:15, 14:21-15:8.) This portion of the record reflects that Appellant entered the guilty plea knowingly, intelligently, and voluntarily. Appellant was given sufficient time to make a decision. Likewise, Defendant was not under any duress and there were no promises made that went unfulfilled. Nor were there any misrepresentations made to trick Appellant into entering a guilty plea. Rather than addressing any concerns when he had the chance, Appellant now comes forward on appeal claiming his plea was involuntary, which indicates to this Court that he is simply dissatisfied with the consequences.

"The law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made." *Comm. v. Willis*, 68 A.3d 997, 1002 (Pa.Super.2013) (quotation and citation omitted); *see also Comm. v. Pollard*, 832 A.2d 517, 522 (Pa.Super.2003) (holding defendant's appeal frivolous). Otherwise, a plea will be considered a manifest injustice by a sufficient showing of prejudice by a defendant. *See Pollard*, 832 A.2d at 522. In analyzing whether a plea is knowing, voluntary, and intelligent, the "law presumes that a defendant who enters a guilty plea was aware of what he was doing." *Id.* at 523 (citation omitted). Likewise, a defendant "may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Id.*

Instantly, Appellant was fully informed and examined on the record on February 26, 2018. (*See generally* N.T. – Guilty Plea.) Appellant was aware of the maximum sentence he would face if found guilty at trial, as well as his absolute right to go to jury trial where the Commonwealth would have the burden of proving his guilt beyond a reasonable doubt. (*Id.* at 14-15.) Moreover, Appellant acknowledged that he reviewed and understood all of his rights described to him on the written guilty plea form. (*Id.* at

13

18:3-11.) Appellant may not be satisfied with the results of his guilty plea, but that does not mean his plea was not voluntary, intelligent, and knowing.

## CONCLUSION

Wherefore, the reasons stated above, this Court's final decision was proper and should be affirmed.

BY THE COURT:

**GAIL A. WEILHEIMER,** **J.**

**Copies Sent on November ⌐1, 2018, to:**
Superior Court Prothonotary
DA's Office – Appellate Division
Defense Counsel, Lee Awbrey, Esq.

14